Good morning. May it please the Court. My name is Peter Coote. I represent the appellant, E. v. The United States military Can you keep your voice up? Speak a little closer and keep your voice up. Yes, Your Honor. The United States military seized the confidential and privileged mental health records of an American civilian and turned those records over to a third party, the man accused of sexually assaulting her. Sovereign immunity cannot be used to deny her the ability to challenge the unlawful and unconstitutional action by the U.S. military. In Larson and Dugan, the Supreme Court set out that constitutional claims where an officer exceeds either the statute and implements a statute in an unconstitutional manner or if the statute itself is unconstitutional, that sovereign immunity will not bar those claims. In U.S. v. Yakima Tribal Court, this Court applied the Larson-Dugan exception to sovereign are not barred by sovereign immunity. You only have one constitutional claim, correct? Yes, Your Honor. The Fourth Amendment. The Fourth Amendment. What are the other claims? The other claims are violation of the statute that excludes and removes a constitutionally required exception and the rule that — Is the judge exercising his discretion in whether or not to allow the turnover of this information? No, he's not exercising discretion if he goes directly against — What was he doing? There was a motion made in front of him to turn over or to produce, to have the government produce this information. The Supreme Court has held that an abuse of discretion is — an error of law is, by definition, abuse of discretion. So if he's looking at the facts and applying the facts that he finds to the law, he has discretion, but — Well, we have cases like Ammon Oil where the Court wasn't — we weren't even interested in whether the EPA administrator had made a mistake or not and misinterpreted the scope of his authority, we said. He wasn't acting totally unlawfully or totally outside the scope, and therefore, he retained sovereign immunity. Why isn't that controlling here? Which case? I'm sorry. I didn't hear you. I have difficulty hearing you. Ammon Oil, where the claim was against the secretary of the EPA for misunderstanding his authority to take over wetlands. If you're not familiar with that case, that's fine. But that's one of the leading Larson-Dugan cases in our circuit. Can I ask you about the Fourth Amendment claim also? Sure. So in your complaint, because we're here on a motion to dismiss, the count four quotes the Constitution and then says that Robinson violated her Fourth Amendment rights, but doesn't provide any allegations that would indicate how the Fourth Amendment even applies in this situation. So where — what is the — I didn't see it in the complaint, but what is the plausible allegations that there was a Fourth Amendment violation? What case says there's a Fourth Amendment violation when a judge issues a subpoena for specified information and the information is produced? There are numerous cases, but in this circuit, not applying the attorney-client privilege, but applying the clergy-penitent privilege in U.S. v. — I'm sorry, in Mikaitis v. Harcorod, this Court held that a violation of the clergy-penitent privilege under Oregon law, because they violated that privilege, it was — it was a — it violated her reasonable expectation, violated, in this case, his reasonable expectation of privacy, and it enjoined the Oregon prison system from listening in on conversations between a priest and the penitent. Well, there's an evidentiary issue, but I'm trying to understand what the Fourth Amendment violation is. It is — they seized her records unreasonably. It must be unreasonable to be a violation of the Fourth Amendment. And what case says that for medical records? Because my — I know the Supreme Court specifically held open the question as to whether, in Nassiv v. Nelson, as to whether there was any constitutional protection for medical records. The — the Nelson case is — is one of them where this Court held that — The Supreme Court said it was an open question. It didn't address that in Nelson. It expressly said it's an open question. And — and subsequent to that, the — the Supreme Court recognized, after Jaffee, the Supreme Court recognized the attorney-client privilege of whether someone — the death terminates the privilege in Swidler v. Berlin — or Swidler and Berlin. The — but — but this Court recently cited that case, I shouldn't say recently, 2009, in Murdoch v. Castro. And they — at that time, the Supreme Court still had not addressed whether the attorney-client privilege must ever give way to some — to a defendant's confrontation rights. So there's no clearly established law that would give a military defendant a constitutional right to — that would supersede the — Right. But you have to make it a plausible allegation of a Fourth Amendment violation, and I guess I didn't see that in the — in the complaint. Your Honor, the — I believe the complaint sets forth the — the basics of the constitutional violation, and, you know, during the case, we'd fill that out. Okay. I'm sorry? It just repeats the language of the Fourth Amendment. What concerns me in this case is, let's say it's not a military judge, but it's a district judge in the Federal court system, Article III judge, and you say that — that your client's constitutional rights have been infringed. How would you go about doing that same way? Do you have authority that the potential witness can sue the Federal district judge? Yes, it's — it's — that's been the practice since at least 1908. In 1920, the Supreme Court, Justice Holmes, allowed — there was a subpoena for some business records, and the — the business objected to the subpoena, and the court considered it and ordered that the subpoena be enforced. The district court ordered that the subpoena be enforced, and the Supreme Court reversed it, saying that there's a Fourth Amendment right to privacy, and that search was unreasonable. Butts v. Economo, as well, that's a Supreme Court case that — that likewise finds that. All of those cases are cases where the challenge is — a challenge of a district court judge doing that. This should be, you know, a lot more clear because, at least in those cases, they've had a district court, an Article III judge, determine the rights of the privilege holder. In this case, no Article III judge has done that. Military judges are basically disciplinarians. They are not protected. They are not Article III judges. And they are enforcing the good order and discipline of the armed forces. That's their purpose. They are not — the Supreme Court once said that court-martials as an institution are singularly inept in dealing with the nice subtleties of constitutional law. They are not trained and don't have the ability and — and should not be deciding the rights of people who are not under — who are not being — before the court-martial to be disciplined. When you have a third party and you need their evidence, that third party has rights, and the — the military has the ability to — the military has the ability to — the military's ability to decide what those rights are initially, but it's subject to meaningful review by the — Okay. You're over your time. Thank you. I'll give you a minute for rebuttal, but that's it. Thank you. Good morning, and may it please the Court. Greg Broderick from the United States Attorney's Office, and I represent Lieutenant Colonel Robinson, who's been sued in his official capacity as a military judge. It's our position that sovereign immunity bars this action for a number of reasons. First, we don't think Larson-Dugan is good law anymore. I'm happy to talk about that if you'd like to. We — the Court still seems to think it's good law. I'm not sure that's — I'm not sure that's right. Well, sure it is. We have — we have a number of cases. We can't just dismiss those cases. We can't disregard those cases. I think if you take a fresh look at the EEOC v. Peabody-Western-Cole case, what Judge Fletcher's opinion for the Court says in that case is that Section 702 of the APA, the broad waiver that was added in 1976, replaces the old Ex parte Young scheme, and the — pardon me. In cases brought under the APA. No, that's not right. It's not an APA case. Let's just assume that Larson-Dugan is still good law in the Ninth Circuit. So how does it apply here? I don't think it applies here for several reasons. First, we think that they — that they waived this argument by not raising it below. But leaving that aside, they've sued Judge Robinson in his official capacity only. That's in paragraph 8 of their complaint. And Larson-Dugan, Malone, all of those cases, Hawaii v. Gordon, all place a strong emphasis on the fact that if you want to sue an officer for acting beyond his powers or acting unconstitutionally, you're entitled to, and I'm quoting from 695 of Larson, specific relief against the officer as an individual. Same language in Dugan at page 70 — I'm sorry, at page 622. Action can be made, the basis of a suit for specific relief against the officer as an individual. And that language is straightforward. But Larson itself, though, said that the mere fact that his official capacity is ascribed to the agents against whom relief is sought is not conclusive that he's being sued as for a sovereign. So the complaint sought specific relief against the administrator in his official capacity. So Larson at least didn't think that made a difference. I'm not — that's not how I read Larson. I read Larson to say it was right to sue him in his official capacity because the relief they were seeking from him required official action. So isn't that the case here? Because what the appellant is seeking is injunctive relief to order or mandamus relief to order the judge to destroy the existing copies of the document. So that's how I read the briefing. That is what they're seeking, but that's why it's barred. So my reading of Larson and those cases that follow it, the way I read those is to say when the officer's acting in his official capacity, he's got sovereign immunity. When he either violates the Constitution or acts ultra vires, he steps out of that. That's what they're alleging, right? Yeah, they're alleging that because he violated the evidentiary rules, this is their allegation, he was — he was exceeding his authority and therefore can be — can be sued. As an individual is how I would read that. Yes, that's right. As an individual. You're resulting form over substance, as they say. Well, I don't think that's right, Judge Piusdell. The whole idea behind this fiction, to the degree it still exists, the whole idea behind this fiction is you're not doing the government's business anymore. You're liable to suit as an individual, much like for a damages action under Bivens, for example, when the officer behaves unconstitutionally. Sure, he's acting under color of law, but he's no longer acting in his official capacity, and that's what subjects him to suit. And our reading is it's the same here. But I have additional reasons. I'd urge you to go back and look at that language from Larson, Dugan, Malone, and Hawaii v. Gordon. There's a very heavy stress on the individuality of that. So — but I've got additional reasons also. They seek official relief here. And so what Larson says is the crucial question when you're trying to determine is this really a suit against the sovereign or isn't it, the crucial question is does the relief run against the sovereign? And the relief here, at least as we're positioned now, can only run against the sovereign. There might have been an argument at the outset of this suit before the documents were turned over that you could just say to Judge Robinson, stop, don't do anything more that we believe is unconstitutional. But that's over now. The documents have been handed over. The court-martials happened. And so all that's left is an order to say go destroy these records. That's not an order to Judge Robinson. That's an order to the government. By the way, and I'm sure this was evident in our briefing, but those documents are going to be destroyed in March of next year one way or the other under the military regulations. So we think the case will be moot at that time, but it's not moot now. But this is an order that's going to be directed to the government. It may have Lieutenant Colonel Robinson's name on it. He may or may not even still be in Okinawa. I don't know. But it won't be him that's carrying it out, and it won't be an order that's really directed to him. And Larson says that's the crucial question. The same thing in the Amanoil v. Gorsuch case that you brought up earlier, Judge Ikuta, that's cited in cases that we cited. That case says, look, you're seeking relief against the administrator of EPA in that case to stop her from enforcing the Clean Water Act. That's official activity. Sovereign immunity applies. And I'd also point this Court to a case called Roca Salida decided in 2016, and Roca Salida says a similar thing. If you're going to seek relief against an officer as an individual, you can't seek relief that requires that officer to behave in her official capacity. What do we do about the constitutional claim? Because the appellant makes a Fourth Amendment claim, and the case law states that if an official, a federal official acts, either acts unconstitutionally or enforces an unconstitutional statute, that official's not protected by sovereign immunity. So I don't think they've stated a constitutional claim, and I don't think so for several reasons. First, I'm not aware of any authority that says an order to produce documents in a discovery dispute in any kind of court creates an independent claim under the Fourth Amendment. The cases he cited to Dionisio from the Supreme Court in the Holmes opinion he referenced here earlier, those are direct review of court orders enforcing a grand jury subpoena. So somebody got a subpoena, they didn't comply, they got an order to comply, and the Supreme Court said, no, the subpoena there goes beyond what's reasonable under the Fourth Amendment, so we're not going to enforce it. That's quite apart from a claim, an independent claim. And I shared Judge Seiler's concerns when I looked at this, is I don't – if this works, I don't see the limiting principle that would stop, say, a cadet at the Naval Academy in Annapolis, Maryland, or somebody assaulted by that cadet from filing a lawsuit in Baltimore against some member of the military, or if he didn't like the order that he got from the judge in Baltimore, to file a case against that judge in some neighboring jurisdiction. So there's not really a limiting principle here, and that's the difficulty with their argument. But again, the crux of our argument, aside from the idea that Larson-Dugan's not good law anymore, the crux of our argument is the relief here runs against the government itself, and that's what Larson says is the crucial question. I want to make a pitch, even though I'm getting skepticism from you, Judge Pius, to go back and take a look at the Mashiri case, which is the case they rely on. When I got your order, I went back and I read all the briefs in Mashiri, and I listened to the oral argument, and this issue is literally mentioned in a half a page by a pro se plaintiff. It was not the real issue in Mashiri. Now, I understand Mashiri says what it says, but all they say is that the only potentially applicable waiver of sovereign immunity for Mashiri, because the one he wanted to rely on wasn't available. The only potentially applicable one was this Larson-Dugan thing, and it didn't work for him because the officer's acts weren't ultraviolet, so it didn't matter, and he lost. And they determined that, though, by looking at the merits. In other words, they said if he had made an error, then perhaps he would not have sovereign immunity, but he didn't make an error. Well, I'm not sure that's exactly right. I think what they said is the only potential support, and that's at 1032, for Mashiri is Larson-Dugan. They block quote this language from Larson-Dugan, and then they say, hey, that turns out to be the same question as the merits. Just take a look. I don't think it bears the weight that they put on it, but I don't think in the end that it matters because I think we win either way. And so I don't think their constitutional claim is really a constitutional claim at all. I don't think it creates an independent cause of action. I also wanted to point out that they seek affirmative review here. Now, footnote 11 of Larson says you can't use Larson-Dugan if you're seeking affirmative relief. This Court has tempered that language and said, well, it doesn't really go quite as far as it seems. You'd have to look at what the burden on the governmental function would be of permitting review. So it's not quite as simple as, hey, you're seeking affirmative relief, so you lose. At least in this circuit, it's not that simple. But footnote 11 of Larson says that, and this circuit says if it would create too great a burden on the governmental operations, we can't, we're going to not apply Larson-Dugan. We think that's significant here because not only the delay in this individual court-martial, but considering the number of military installations both within and outside of the United States, the number of discoveries. None of the documents were, they were admitted at the court-martial? None of the documents themselves were admitted at the court-martial. What they ended up doing is reaching a stipulation saying what happened. And my understanding from opposing counsel, I've not ever read those documents because I figured she didn't want any more people reading them than already had. Who saw it? Did the defense counsel look at them, at the documents? In the military case? Yes, Your Honor. The defense counsel, the prosecutor, and the judge all looked at the documents, at least the redacted documents. The judge himself got the full monty, but the rest of them got to look at the redacted documents. But I haven't looked at them. My understanding, just to be candid, is that the language that's in that stipulation that was used at trial, I think a lot of the language is directly quoted out of the document, the allegedly privileged. So there's a limited world where all these documents are, is that correct? That's right. They only exist now in one place, which is in like a locked room in the military filing, judge's filing chamber, someplace in Okinawa when they'll be destroyed in a couple of years. But the 15 pages of heavily redacted documents that were actually turned over, which apparently were used to create the stipulation, those only exist in hard copy in the same place, too. Okay. Thank you. Thank you. I'll give you a minute. Thank you, Your Honor. There are actually at least two copies of her unredacted records in the military system, one held by the defendant and the other held by the trial office, the prosecutor. Did he have a private counsel at this, in the court-martial? Didn't he have a military officer defending him? Does who does it? Martinez. Yes. He had a he had a and he has one probably, but we don't have that on the record. But he was given it and he's allowed to keep, but he would only have the redacted version. The and the case is not moot as long as those copies exist within the military, because those copies are an affront to her privacy. But once they're destroyed, that's the end of it. We want them to be destroyed. And if they exist electronically anywhere in the military system, we want that to be done as well. They say they're going to be destroyed, what, next year? Well, that's not entirely true. The record shows that the record of trial, that's what the affidavit referred to. It's a record of trial gets destroyed after two years. These are not part of the record. The copies I'm talking about in possession of the judge and the trial counsel are separate from that, and their affidavits don't say anything about that. Okay. Now you're over. Went by quick, didn't it? That minute flies by. Your question is? I don't have a question. I'm just saying your time is up. Thank you very much, counsel. We appreciate your arguments. Thank you. Go ahead.
judges: Siler, Paez, Ikuta